**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No.** |
| | ) | |
| **TWO REAL PROPERTIES LISTED** | ) | |
| **IN PARAGRAPH THREE** | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW the United States of America (the "United States" or the "Government"), by and through Margaret E. Heap, United States Attorney for the Southern District of Georgia, and Morgan M. Wiegand, Assistant United States Attorney, and brings this Verified Complaint for Civil Forfeiture *In Rem*, with the following allegations:

## NATURE OF THE ACTION

1.      *In Rem* civil forfeiture is permissible under Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G").

2.      The Defendants *In Rem* are subject to forfeiture to the United States pursuant to 18 U.S.C. 1594(e)(1) on the grounds that the **Defendant Properties**, as defined later herein, are any property, real or personal, involved in, used, or intended to be used to commit or to facilitate the commission of any violation of 18 U.S.C. § 1589 (forced labor).

## THE DEFENDANTS *IN REM*

3.      The Defendants *In Rem* (hereinafter, the **"Defendant Properties"**) consist of the following assets:

a.    Real property located at 709 S.E. Main Street, Collins, Georgia 30421 in Tattnall County, Georgia ("**Defendant Property 1"**) more fully defined as:

All that tract or parcel of land lying and being in the 1601st G.M. District containing 1.49 acres, more or less, and being bounded as follows:

Fronting about 150 feet on the east side of Ga Highway #121 (S. Main Street) in the City of Collins, Georgia; north by Pearl Street and across this street by lands of Georgia Power Company, east by lands of M.C. Taylor and land of Mrs. Lauvonne Jarriel; south by land of Thomas J Boyette; and on the west by Georgia Highway #121 (S. Main Street). This is the same land mentioned in that deed from Vance and Janice Harris to Dennis and Pearlie Doxilly dated 01-17-85 and recorded in Tattnall County Deed Book 160, page 90.

Said property is a portion of that conveyed to Debra Willis Joiner by Quitclaim Deed from Ellis Ray Joiner, dated July 14, 2017, and recorded in Deed Book 658, Page 114, Tattnall County Public Records.

Less and Except:

All that certain tract or parcel of land, situate, lying and being in the 1601st G.M. District of Tattnall County, Georgia, and in the City of Collins, being Parcel #1, containing 0.100 of an acre, more or less according to a plat of the same made by Charles H. Tomberlin, Ga. Reg. Land Surveyor No. 2973, dated October 27, 2017 and recorded in the office of the Clerk of the Superior Court of Tattnall County, Georgia, in Plat Book 2018, Page 39, reference being hereby made thereto for descriptive and for all other purposes. Said tract of land is bounded, now or formerly, as follows: North and Northeasterly by lands of Debra Willis Joiner; Southerly by lands of Paul W. and Angela G. DeLoach and Westerly by the right of way of S. Main Street (being Ga. Hwy. 23)

Less and Except:

All that certain or parcel of land, situate, lying and being in the 1601st G.M. District of Tattnall County, Georgia, and in the City of Collins, being Parcel #2, containing 0.101 of an acre, more or less according to a plat of the same made by Charles H. Tomberlin, Ga. Reg. Land Surveyor No. 2973,being in the shape of a triangle, dated October 27, 2017 and recorded in the office of the Clerk of the Superior Court of Tattnall County, Georgia, in Plat Book 2018, Page 39 reference being herby made thereto for descriptive and for all other purposes. Said tract of land is bounded, now or formerly as follows: Northerly by lands of Debra Willis Joiner; Easterly by lands conveyed to Joel Buttersworth; and Westerly by lands of Paul W. and Angela G. DeLoach.

Said property is a portion of that conveyed to Paul W. and Angela G. DeLoach by Joint Interest Deed with Right of Survivorship, dated October 13, 2006, and recorded in the Deed Book 514, Page 481, Tattnall County Public Records.

b. Real property located at 132 E. Brazell Street, Reidsville, Georgia 30453 in Tattnall County, Georgia ("**Defendant Property 2**") more fully defined as:

All that 0.65 acres, more or less, lot of land in the 41st G.M. District of Tattnall County, Georgia location at the southeast intersection of East Brazell Street (U.S. Hwy 280 E. toward Claxton) and Cedar Street, in the City Reidsville, Georgia, bounded now or formerly as follows: north by Cedar Street; east lands of Donald G. Gariepy; south by land of Leonard and Tracy Gonźalez and land of Wayne and Regina Johnson; and on the west by East Brazell Street. This lot is more particularly described by reference to a plat of survey prepared by C. G. Alexander, Surveyor dated September 6, 1971 and recorded in Tattnall County Deed Book 5-C, page 47. This is the same land conveyed in that deed from Quida Samples Pittman to Debra Willis and Elizabeth (Libby) Willis from Quida Samples Pittman to Debra Willis and Elizabeth (Libby) Willis dates October 2, 2008 and recorded in Tattnall County Deed Book 545, Pages 294-295.

## **JURISDICTION AND VENUE**

4.      The United States brings this action *In Rem* in its own right to forfeit the **Defendant Properties**.

5.      This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345.

6.      The Court has jurisdiction over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

7.      The Court has *In Rem* jurisdiction over the **Defendant Properties** pursuant to 28 U.S.C. § 1355(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and/or omissions giving rise to the forfeiture of the **Defendant**

**Properties** occurred in this district, and also pursuant to 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b) because the **Defendant Properties** are located and found in this district.

9.      Criminal acts underlying the forfeiture basis in this case occurred in the Southern District of Georgia in violation of 18 U.S.C. § 1589 (Forced Labor) and the **Defendant Properties** are located in the Statesboro Division of the Southern District of Georgia.

10.      Pursuant to Rule G(3)(a) and 18 U.S.C. § 985(c), a notice of this forfeiture action and copy of the complaint shall be posted on the real properties and served on the owner(s) of the real properties. Thereafter, under 18 U.S.C. § 985(c)(3), neither the issuance of a warrant *in rem* nor any other action will be necessary for the Court to establish *in rem* jurisdiction over the **Defendant Properties**.

<u>**BACKGROUND INFORMATION**</u>

11.      During the time period of the crimes alleged in this Verified Complaint, between in or about November 2014 through June 4, 2024, the following information was true and correct:

a.      Foreign nationals could not work in the United States without prior authorization from the United States government.

b.      Foreign nationals could obtain work authorization in the United States if a qualifying sponsor, an employer based in the United States, petitioned the United States government for a nonimmigrant visa on their behalf.

- 4 -

c.     A nonimmigrant visa that authorized foreign nationals to work for an agriculture employer was called an "H-2A visa."

d.     To petition the United States government for nonimmigrant H-2A visas for foreign workers, qualifying sponsors based in the United States completed a form under penalty of law, in which they claimed they were seeking foreign workers for work authorization and that the information provided in the form was truthful and accurate; and then mailed their form and supporting documentation to the United States government for processing.  This form was called Form I-129, Petition for Nonimmigrant Worker (Petition).

e.     The first step of the process involves preparing and submitting an agricultural job, Department of Labor (DOL) Form ETA-790A, directly to the Chicago National Processing Center (NPC)

f.     The Chicago NPC reviews H-2A's initial work orders to ensure completeness and compliance.

g.     The employer then types the required information into the boxes and uploads any necessary documents.

h.     Based on these certifications, the United States would issue nonimmigrant H-2A visas to foreign workers authorizing the workers to enter the United States and perform paid work for an agriculture employer harvesting crops for a specific period of time

i.     Under the lawful H-2A visa program, a qualifying sponsor or employer was required to pay the foreign worker under the terms of the contract,

typically ten to twelve dollars per hour, with pay stubs that accurately list the foreign worker's pay, hours worked, deductions, and earnings.

j.    Under the lawful H-2A visa program, a qualifying sponsor or employer was also required to pay upfront or reimburse workers in the first work week for costs associated with obtaining the H-2A visa, border crossing fees, reasonable transportation, lodging, food expenses, and the reasonable costs associated with returning to their home countries.

k.    Under the lawful H-2A program, a qualifying sponsor or employer was prohibited from holding or confiscating the immigration documents of its H-2A foreign workers; seeking or receiving payments of any kind from its H-2A foreign workers for recruiting them; and conditioning the employment in any way on the payment of a fee from its H-2A foreign workers.

## Real Property Ownership Information

12.    On or about April 19, 2018, Donna Michelle Rojas, a/k/a Donna Michelle Lucio (Lucio) acquired ownership of **Defendant Property 1** through a sale by its then owner.

13.    On or about April 30, 2018, Lucio acquired ownership of **Defendant Property 2** through a sale by its then owner.

14.    Lucio was a United States citizen and recruited foreign workers to enter the United States under the H-2A visa program.

15.    Lucio unlawfully held foreign workers' identification documents after they entered the United States.

16.    Lucio laundered the proceeds of violations of 18 U.S.C. § 1589 by smuggling cash across the border and by funneling cash through casinos.

17.    Lucio assisted another person in filing fraudulent Petitions to bring foreign workers into the United States under the H-2A visa program.

## FACTS AND BASIS OF FORFEITURE

18.    This investigation was initiated by the Department of Homeland Security Investigations, the U.S. Department of State Diplomatic Security Service, and the U.S. Department of Labor Office of Inspector General into forced labor offenses committed by Lucio and other persons.

19.    Lucio was charged in a criminal indictment on October 5, 2021 (Docket No. 5:21-cr-9 (S.D. Ga.) at Doc. 3).

20.    Particularly, the **Defendant Property 1** and **Defendant Property 2** are forfeitable to the United States, as property, real or personal, involved in, used, or intended to be used to commit or to facilitate the commission of any violation of 18 U.S.C. § 1589.

21.    Conspirators located in foreign countries would and did fraudulently recruit foreign workers to work in the United States by unlawfully requiring the foreign workers to pay excessive fees for the opportunity to come to the United States on an H-2A visa.

22.    Conspirators located in foreign countries would and did forward the unlawful fees paid by the foreign workers to conspirators located in the United States.

23.    Lucio and other conspirators would and did collect additional cash fees

from workers within the United States.

24.   After receiving the unlawful fees paid by foreign workers, conspirators located in the United States, including Lucio, directed the filing of fraudulent petitions seeking nonimmigrant H-2A visas for the foreign workers who paid the unlawful fees.

25.   Once the foreign workers were approved by the federal government to enter the United States, based on the fraudulent H-2A visa petitions, and did enter the United States on the H-2A visas, conspirators would and did confiscate the foreign workers' passports and H-2A visas and force the foreign workers to work in agriculture fields in the United States for little to no pay in violation of the H-2A visa process.

26.   Conspirators would and did use the identities of others in filing petitions to avoid detection.

27.   Conspirators would and did force foreign workers to pay additional unlawful fees to get their passports and H-2A visas back from conspirators.

28.   Conspirators would and did threaten to call immigration officials if the foreign workers did not pay, refused to work, or spoke with law enforcement.

### Defendant Property 1

29.   On or about May 20, 2021, federal agents executed a federal search warrant at **Defendant Property 1,** the then residence of Lucio.

30.   During the search of the property agents located a purse with $3,729 cash along with the passports of fifteen workers associated with petitioner Jose

Humberto Martinez.

31. Jose Humberto Martinez is a United States Citizen who worked with the Rojas family to recruit foreign workers to enter the United States under the H-2A visa program.

32. Jose Humberto Martinez is the uncle of Lucio.

33. Agents located paperwork to include payroll records and correspondence with the Department of Homeland Security for petitioner Jose Humberto Martinez.

34. On October 15, 2025, agents received a sworn statement from a worker, Victim 1, who was a former worker of Jose Humberto Martinez.

35. Victim 1 indicated that they had to make illegal payments in Mexico, and they were forced to work from 7 or 8 AM until 9 or 10 PM from Monday to Saturday, while sleeping on an air mattress and being paid $12 to $30 per day.

36. The crew leaders who managed the workers all carried guns and yelled threatening insults at the workers.

37. Victim 1 felt fear from stories of other workers who indicated other female workers were assaulted and abused.

38. Victim 1 believed this because they frequently saw crew leaders touching other female workers.

39. During the search of **Defendant Property 1** agents located documents associated with petitions filed by Stephanie Rangel Vazquez (Vazquez) and Jennifer Rangel (Rangel).

40. Vazquez is a United States Citizen and recruited foreign workers to

enter the United States under the H-2A visa program.

41. Co-conspirator Vazquez laundered money by smuggling cash across the border and by funneling cash through various large purchases at stores.

42. Co-conspirator Vazquez was an associate of Lucio.

43. Rangel is a United States Citizen and had petitions filed in her name for workers to enter the United States under the H-2A program.

44. Rangel is the twin sister to co-conspirator Vazquez.

45. On September 11, 2024, agents executed a federal search warrant on Vazquez's residence and obtained a federal search warrant for her cellular phone.

46. Multiple conversations with Lucio were noted on the phone to include conversations about illegal fees.

47. During one text exchange between Vazquez and Israel Navejar on August 14, 2024, Vazquez relayed the following;

"U We're doing illegal. Remember when I met you. You were working with your cousins. You wouldn't did all the Fingerprints. Remember all the people in date city and stuff like that. Or did you forget I got pictures too I got evidence of what you were doing to stuff like that / Hajuana and Donna had ou getting Fingerprints for that."

48. Israel Navejar is a United States Citizen and had petitions filed in his name for workers to enter the United States under the H-2A program.

49. Israel Nevejar is the significant other to Vazquez.

50. Additional messages of images sent by Lucio of Jose Humberto

Martinez's driver's license and social security card were discovered during the search of Vazquez's phone.

51.    On 12 April 2021, Victim 2 was issued an H2-A visa to conduct work under petitioner Vazquez, IOE8439181963.

52.    On December 18, 2024, agents interviewed Victim 2.

53.    Victim 2 indicated that once they arrived in Georgia, they paid $1,500 to "Donna" i.e., Lucio, who indicated she was the boss.

54.    Victim 2 stated the bus driver had a list of names and how much they needed to pay.

55.    One of the drivers told the workers they needed all the passports to do paperwork.

56.    Lucio had problems with the police, and the workers were told to leave quickly, and Victim 2 never received their passport back.

57.    Before an employer may obtain authorization to hire temporary foreign labor, the employer must demonstrate that United States temporary workers are not available to meet the employer's needs.

58.    Agricultural employers submit an agricultural clearance form, DOL Form ETA-790, to the State Workforce Agency for placement on its intrastate job clearance systems in an attempt to recruit domestic workers prior to receiving authorization through the H-2A program.

59.    **Defendant Property 1** was listed as the mailing and business address for Vazquez in petitions IOE8439181963 and IOE8259263630, reflected on the DOL

Form E.T.A. 790.

60.     During the search of **Defendant Property 1** agents located employee timesheets for Esmeralda Balderrama.

61.     Esmeralda Balderrama is a legal permanent resident and had petitions filed in her name for workers to enter the United States under the H-2A program.

62.     Agents conducted an interview of Victim 3 who indicated that in 2018 they went to work for Farm Labor Contractor, (FLC) Esmeralda Balderrama.

63.     A FLC is a person or business who recruits, solicits, hires, employs, furnishes, or transports migrant or seasonal agricultural workers for money or other benefits.

64.     FLCs are required to apply with the Department of Labor for farm labor contracting activities.

65.     Victim 3 was overseen by Delia Ibarra Rojas (Rojas) and Lucio.

66.     Rojas is the mother of Lucio.

67.     Rojas was a lawful permanent resident and head of the Rojas family.

68.     Rojas laundered money for the Patricio Transnational Criminal Organization (TCO) by smuggling cash across the border and by funneling millions of dollars through casinos.

69.     Rojas and Lucio told the workers they all had to leave Georgia and go work for a company in Indiana.

70.     Rojas arranged a bus to take the workers to Indiana, and Victim 3 had to buy a fraudulent Legal Permanent Resident Card before starting work.

71.     During the financial review of Primo Labor, the company where Victim 3 worked, agents located payments to Rojas totaling $21,481.

72.     Primo Labor is a company based out of Cicero, Indiana that conducts detasseling of corn.

### Defendant Property 2

73.     On November 17, 2021, agents executed a search warrant of **Defendant Property 2**.

74.     During the search of **Defendant Property 2** agents discovered $15,900 U.S. currency in $100 dollar bills located in shoes in the bedroom.

75.     Agents removed the cash and provided the shoes containing the cash to co-conspirator Rojas.

76.     During the November 17, 2021, search of **Defendant Property 2** agents located a manila envelope containing copies of identity documents such as social security cards, driver's licenses and fingerprint cards of approximately nineteen individuals.

77.     On March 30, 2022, agents conducted an interview of Victim 4 and Victim 5 who had documents in their name at **Defendant Property 2**, and a petition, WAC1922751191, filed for H2-A workers in Victim 4's name.

78.     Victim 4 explained to agents that they never petitioned for farm workers.

79.     Both Victim 4 and Victim 5 were taken to the police station with Co-conspirator 1 to get their fingerprints taken. Co-conspirator 1 paid Victim 4 and

Victim 5 $150 for their fingerprint cards.

80.    On March 30, 2022, agents conducted an interview of Co-conspirator 1 at their home in Tampa, FL.

81.    Co-conspirator 1 had documents in their name located in the envelope at **Defendant Property 2**.

82.    Co-conspirator 1 indicated that they were contacted by their aunt, Rojas, to pick crops and obtain fingerprints and documents for harvesting.

83.    Co-conspirator 1 was provided with $500 by Rojas for the fingerprint cards and documents of themselves and others and was never asked to pick crops.

84.    On July 5, 2018, a petition, WAC1822151267, in the name of Victim 6 was mailed to the Department of Homeland Security.

85.    Contained in the petition package were the FLC card and the DOL Form E.T.A. 790 for the employer information, both containing the address 134 E Brazell Street, Reidsville, GA 30453.

86.    A check of Tattnall County Georgia property records indicated there is no "134 E Brazell Street" but the closest address for mail delivery would be 132 E Brazell Street, **Defendant Property 2**.

87.    On April 18, 2018, a petition, WAC1814753432, in the name of Victim 7, was mailed to the Department of Homeland Security.

88.    Contained in the petition package were the FLC card and the DOL Form E.T.A. 790 for the employer information, both containing the address 134 E Brazell Street, Reidsville, GA 30453.

89. A check of Tattnall County Georgia property records indicated there is no "134 E Brazell Street" but the closest address for mail delivery would be 132 E Brazell Street, **Defendant Property 2**.

90. On March 29, 2022, agents conducted an interview of Victim 7 and Victim 6.

91. Both Victim 6 and Victim 7 indicated that they had never filed paperwork for farm workers and did not file the petitions.

92. Victim 7 indicated that they and Victim 6 went to the police station to get their fingerprints taken, and they provided their documents to a co-conspirator, Carlos Garcia ("Garcia").

93. A petition was filed in Garcia's name in 2018.

## Summary

94. By the foregoing and other acts, the **Defendant Properties** are subject to forfeiture to the United States pursuant to 18 U.S.C. § 1594(e)(1) on the grounds that the **Defendant Properties** were involved in, used, or intended to be used to commit or to facilitate the commission of any violation of 18 U.S.C. § 1589 (forced labor).

## CLAIM FOR RELIEF

### (Forfeiture Pursuant to 18 U.S.C. § 1594(e)(1)(A))

95. The United States incorporates by reference the allegations contained in paragraphs 1 through 94 above as if set forth fully herein.

96.     The **Defendant Properties** were used, and were intended to be used, in any manner or part, to commit, and to facilitate the commission of, a violation of 18 U.S.C. § 1589 (Forced Labor).

97.     The **Defendant Properties** are therefore subject to forfeiture pursuant to 18 U.S.C. § 1594(e)(1)(A).

## CONCLUSION

WHEREFORE, the United States of America prays that:

a.      The **Defendant Properties** be forfeited and condemned to the use and benefit of the United States;

b.      The United States be awarded its costs and disbursements in this action and for such other and further relief as this Court deems just and proper; and

c.      Due notice be given to all parties to appear and show cause why the forfeiture of the **Defendant Properties** should not be decreed.

Respectfully submitted this 3rd day of April 2026.

MARGARET E. HEAP
UNITED STATES ATTORNEY

By:     */s/ Morgan M. Wiegand*
        Morgan M. Wiegand
        Assistant United States Attorney
        Missouri Bar Number 70779
        P.O. Box 8970
        Savannah, GA 31412
        (912) 652-4422

- 16 -

## VERIFICATION OF COMPLAINT FOR FORFEITURE *IN REM*

I, Special John Siegenthaler, have read the foregoing Complaint for Forfeiture *In Rem* in this action and state that its contents are true and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 3rd day of April 2026.

John Siegenthaler
Special Agent
U.S. Department of State
Diplomatic Security Service